GRIFFITH (WORTMAN v.). See Case No. 18,057.

## Case No. 5,825.

### In re GRIFFITHS.

[2 Lowell. 340; [1] 10 N. B. R. 456; 1 Cent. Law J. 507; 10 Alb. Law J. 249; 1 Am. Law T. Rep. 476.]

District Court, D. Massachusetts. Sept., 1874.

#### BANKRUPTCY—DISCHARGE.

Section 9 of the statute of 22d June, 1874 [18 Stat. 180]. concerning the conditions upon which a discharge is to be granted to bankrupts, applies to cases pending when the act was passed. Such a statute is not retrospective in the legal sense.

[Cited in Re Watson, Case No. 17,273: Re Derby, Id. 3,816; Re Lowenstein, Id. 8,-573; Re Gifford, Id. 5,408; Re Townsend, 2 Fed. 562.]

In bankruptcy.

LOWELL, District Judge. The question presented by the register's certificate is whether section 9 of the act of June 22, 1874

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

(18 Stat. 180), which dispenses with the consent of creditors to the bankrupt's discharge in compulsory cases, applies to pending cases. It was settled by several decisions in Massachusetts that such amendments of the law affected all cases. Ex parte Lane, 3 Metc. [Mass.] 213; Eastman v. Hillard, 7 Metc. [Mass.] 420; Ex parte Bartlett, 8 Metc. [Mass.] 72; Eddy v. Ames, 9 Metc. [Mass.] 585. But as the law has been pronounced to be otherwise in relation to this statute, in an able opinion of Judge Blatchford's, I feel bound to give briefly my reasons for agreeing with the earlier decisions.

Section 9 says, in substance, that in cases of compulsory bankruptcy the provisions of the former laws requiring the payment of a certain proportion of debts, or the assent of a certain number of creditors, as a condition of a bankrupt's discharge, shall not apply; but if otherwise entitled, he is to have the discharge without such payment or assent. And in cases of voluntary bankruptcy no discharge shall be granted to a debtor whose assets shall not be equal to thirty per cent of the debts proved against his estate, upon which he shall be liable as principal debtor, without the assent of at least one-fourth of his creditors in number, and one-third in value; and the provision in section 33 of the principal act [14 Stat. 533], requiring fifty per cent of such assets, is repealed.

It is plain, I think, that the section, on the face of it, applies to all cases in which a discharge is applied for after the passage of the act. It was so explained to the house of representatives by Mr. Tremain, who had the bill in charge. Congressional Record, June 17, 1874, p. 60. And the words are almost precisely like those of the statute, which was so construed in Ex parte Lane, 3 Metc. [Mass.] 213, in which Wilde, J., speaking for the court, said: "The court can have no authority to grant a discharge against a prohibition in the statute." And the other cases cited are similar. In all, the law was changed without any express application to future or past cases, and the court unhesitatingly applied it to both classes.

This construction is aided by the express words of repeal which are found in sections 9 and 21. The repeal is unqualified, and I know of no rule which will authorize me to limit the scope of the enactment of repeal, unless it were, indeed, to save rights or titles already vested. And this brings me to what I venture to call the fallacy that such a change in the bankrupt law is retroactive if it is made to affect pending cases. A law which discharges debts already contracted may well be called retroactive; and this law, if retroactive at all, would be so not merely as to cases begun, but as to contracts entered into before its passage. But it is well settled that a mere modification of the conditions upon which a discharge shall be granted to bankrupts, is not retroactive. "It is clear," says the eminent jurist already

quoted, "that the appellant had no vested right to a discharge at the time of filing his petition. Such a right could be acquired only by proving, at the time of applying for a certificate of discharge, that he had in all respects complied with the provisions of statutes 1838 and 1841 [5 Stat. 440] (the latter of which was passed after he had been adjudged an insolvent), by which only a right could be acquired. The latter statute, therefore, is not to be considered a retrospective act, disturbing vested rights, but as altogether prospective in its operation, although it (the discharge) might depend, in some cases, upon acts done before it took effect." 3 Metc. [Mass.] 215. The definition of a retrospective statute is: one which impairs vested rights or imposes new duties or disabilities in respect to transactions already passed. Society for the Propagation of the Gospel v. Wheeler [Case No. 13,156], adopted by Sedg. St. Law, 188; Smith, St. Law, 289. This law is not retrospective in that sense.

The statute in Ex parte Lane [supra] was much more like a retrospective act than is that of 1874, because it actually deprived the insolvent of a discharge for a preference given before the act went into operation. This law neither creates new frauds nor relieves a bankrupt from the consequences of any which he has committed, but merely lightens somewhat the arbitrary conditions before imposed on honest bankrupts as a preliminary to obtaining a certificate. Such a law is always held to be remedial. In re Billing [Case No. 1,408]; Revere v. Newell, 4 Cush. 587.

It is said that one section of the amended act explicitly declares its applicability to pending cases, and another limits itself to cases begun after a certain day. This is true of those sections. But most of the sections leave the matter to interpretation, and must be judged by the subject-matter. Thus, section 14 says that all proceedings may be discontinued upon the assent of a majority of the creditors. There can be no doubt that this covers all cases, whether begun before or after June 22. To settle a case in that way may disappoint some hopes of creditors, but it is remedial, and disturbs no vested rights. So of the section now under consideration. The words seem plain to my apprehension; and the cases cited show how such laws have usually been understood.

I do not mean that there may not be many pending cases which have passed the stage at which the law would be applicable to them, in which, for instance, the debtor or the creditors may have been already entitled to a decree, which only remained to be formally pronounced when the new law went into operation. But, speaking generally, I say that the law was prospective, and applied to all cases in which the actual right had not been acquired, and that all inconsistent acts are unconditionally repealed.

[A much more difficult question, in my judgment, may arise in respect to voluntary cases, namely, whether the assent referred to is that of the given number and value of all creditors who have proved their debts, or only of those to whom the bankrupt is liable as principal debtor; but as this is a compulsory case, that point need not be decided now. Discharge granted.] [2]

[As the act was originally amended by the senate, it retained the words, "as provided by existing laws" in the 9th section. The conference committee struck out these words, and substituted the present requirements.] [2]

---

GRIFFITHS, In re. See Case No. 3,540.

GRIFFITHS (COLLENDER v.). See Case No. 3,000.

GRIFFITHS (HAYFORD v.). See Case No. 6,264.

GRIFFON, The (GREENAWAY v.). See Case No. 5,789.